**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GIL GROVE | : | |
| 102 North 4th Street | : | |
| Reading, PA  19601-1404 | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | |
| RIZZI 1857 S.p.A. | : | |
| Via M. Fanti, 88 | : | |
| 41100 Modena (Italy) | : | |
| and | : | |
| TAN MACH | : | **JURY TRIAL DEMANDED** |
| 60 Healey Road, Unit 10-13 | : | |
| P.O. Box 546 | : | |
| Bolton, Ontario | : | |
| Canada L7E5T4 | : | |
| and | : | |
| TAN-TECH SERVICES, INC. | : | |
| 14 Needham Drive | : | |
| Toronto, Ontario | : | |
| Canada M9W3G6 | : | |

**COMPLAINT**

1.     This Honorable Court has original jurisdiction pursuant to Title 28 U.S.C. §1332 based upon the fact that there is diversity of citizenship between the parties as plaintiff is a citizen of the Commonwealth of Pennsylvania, and defendant, Rizzi 1857 S.p.A., is a foreign corporation with its principal place of business located in Modena, Italy and defendants, Tan Mach and Tan-Tech Services, Inc., are Canadian corporations, with Tan Mach's principal place of business located in Bolton, Ontario and Tan Tech Services, Inc.'s principal place of business located in Toronto, Ontario.  The citizenship of all parties has been determined at the time this action was commenced and the amount in controversy

exceeds the sum of One Hundred Fifty Thousand Dollars ($150,000.00), exclusive of interest and costs.

2.      Plaintiff, Gil Grove, is a resident and citizen of the Commonwealth of Pennsylvania, residing at 1022 North 4th Street, Reading, PA  19601-1404.

3.      Defendant, Rizzi 1857 S.p.A. (hereinafter referred to as "Rizzi"), is a foreign corporation, with its principal place of business located at Via M. Fanti 88, 41100 Modena (Italy), and at all relevant times to this cause of action designed, assembled, manufactured, sold, supplied and distributed a combined smoothing and drying machine used in the leather tanning industry to plaintiff's employer, Strategic Industries, LLC d/b/a Garden State Tanning, Inc.

4.      Defendant, Tan Mach (hereinafter referred to as "Mach"), is a Canadian corporation, with its principal place of business located at 60 Healey Road, Unit 10-13, P.O. Box 546, Bolton, Ontario, Canada L7E5T4, and at all times relevant to this cause of action was responsible for installation, inspections, maintenance and repairs performed on the smoothing and drying machine involved in plaintiff's accident.

5.      Defendant, Tan-Tech Services, Inc. (hereinafter referred to as "Tech"), is a Canadian corporation, with its principal place of business located at 14 Needham Drive, Toronto, Ontario, Canada M9W3G6, and at all times relevant to this cause of action was responsible for installation, inspections, maintenance and repairs performed on the smoothing and drying machine involved in plaintiff's accident.

6.      On or about August 7, 2002, plaintiff, Gil Grove, while properly and lawfully working within the course and scope of his employment as a floor worker at Garden State Tanning, sustained serious and permanent personal injuries more fully set forth hereinafter when his left hand was pulled into the rollers on the underside of the Model No. RDPA 31, No. 243 smoothing and drying machine manufactured by defendant, Rizzi, and installed and maintained by defendants, Mach and Tech.

## COUNT I – STRICT PRODUCT LIABILITY

### GIL GROVE v. RIZZI 1857 S.p.A.; TAN MACH AND TAN-TECH SERVICES, INC.

7.      Plaintiff incorporates by reference paragraphs 1 through 6 of this Complaint, the same as if fully set forth at length herein.

8.      Defendants, Rizzi, Mach and Tech, designed, assembled, manufactured, sold, supplied, distributed, installed, inspected, repaired and maintained the combined smoothing and drying machine involved in plaintiff's accident.  Defendants, Rizzi, Mach and Tech, designed, manufactured, marketed, sold, inspected, repaired and maintained this combined smoothing and drying machine in the regular course of their business.  The combined smoothing and drying machine was expected to and did reach plaintiff without substantial change in its condition.

9.      At the time defendant, Rizzi, designed, manufactured and sold the combined smoothing and drying machine involved in plaintiff's accident, it was in a defective condition because of its unsafe and improper design and construction.

10.      At the time of plaintiff's accident, the condition of the combined smoothing and drying machine had not been substantially altered or changed from its condition when designed, manufactured and sold by defendant, Rizzi.

11.     Defendants, Rizzi, Mach and Tech, are strictly liable to plaintiff under Section 402A of the Restatement of the Law of Torts (Second) since:

(a)     defendants are engaged in the business of designing, manufacturing, distributing, selling, leasing, installing, supplying, inspecting, repairing and maintaining leather tanning equipment such as the combined smoothing and drying machine involved in plaintiff's accident;

(b)     the combined smoothing and drying machine involved in plaintiff's accident was designed, manufactured, equipped, distributed, sold, supplied, installed, inspected, repaired, maintained and/or placed in the general stream of commerce by defendants, Rizzi, Mach and Tech;

(c)     said combined smoothing and drying machine was expected to and did reach users and consumers, including plaintiff, Gil Grove, without substantial change in the condition in which it was manufactured, designed, equipped, distributed, sold, leased and/or supplied; and

(d)     said combined smoothing and drying machine was manufactured, designed, equipped, distributed, sold, leased and/or placed in the general stream of commerce in a defective condition.

12.     Plaintiff avers that defendants by and through their agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors are strictly liable under §402A of the <u>Restatement of the Law of Torts (Second)</u> by:

(a)     designing, assembling, manufacturing, selling, supplying, distributing, inspecting, repairing and/or maintaining a product in a defective condition;

(b)     designing, assembling, manufacturing, selling, supplying, distributing, inspecting, repairing and/or maintaining a product that was unreasonably dangerous to its intended and foreseeable users;

(c)     designing, assembling, manufacturing, selling, supplying, distributing, inspecting, repairing and/or maintaining a product that was not safe for all of its intended and representative purposes;

(d)     failing to have adequate warnings on the product;

(e)     failing to provide adequate warnings to the ultimate users of the product;

(f)     designing, assembling, manufacturing, selling, supplying, distributing, inspecting, repairing and/or maintaining a product that lacked all the necessary safety features to protect users of said product;

(g)     failing to either know of prior accidents and injuries with the product and/or failing to correct and prevent the same accidents and injuries from reoccurring;

(h)     designing, assembling, manufacturing, selling, supplying, distributing, inspecting, repairing and/or maintaining a product with parts/components that could cause serious injury;

(i)    violating applicable state, local and/or industry standards;

(j)    designing, assembling, manufacturing, selling, supplying, distributing, inspecting, repairing and/or maintaining a product that could accommodate components that were unsafe;

(k)    failing to adequately and properly test said product after its design and/or assembly;

(l)    failing to investigate, retain and analyze prior accident information;

(m)    failing to ensure that the ultimate users were advised of the dangers of said product and how to use the product safely to avoid injury;

(n)    designing, assembling, manufacturing, selling, supplying, distributing, inspecting, repairing and/or maintaining a combined smoothing and drying machine that was not equipped with a sensor or "red eye" on the bottom side of the roller which would automatically shut off the machine in the event that a worker's hand broke the plane or the beam of light before crushing the worker's hand;

(o)    designing, assembling, manufacturing, selling, supplying, distributing, inspecting, repairing and/or maintaining a combined smoothing and drying machine that was equipped with a sensor or "red eye" on the top roller which would automatically shut off the machine in the event a worker's hand broke the plane or the beam of light before crushing the worker's hand, but not on the bottom roller to automatically shut off the machine in the event a worker's hand broke the plane or beam of light before crushing the worker's hand;

(p)    designing, assembling, manufacturing, selling, supplying, distributing, inspecting, repairing and/or maintaining a combined smoothing and drying machine that did not adequately protect the hands of a worker attempting to remove a leather hide stuck inside of the machine;

(q)    failing to implement a safety feature which would make it impossible for a worker's hands to become caught and/or pulled through and crushed by the bottom roller of the machine;

(r)    failing to properly instruct the users of the product; and

(s)    by conducting themselves as aforesaid, defendant's actions and/or inactions were substantial factors and increased the risk of harm to the plaintiff.

13.    Solely by reason of the strict liability of the defendants, jointly and severally, as aforesaid, the plaintiff was caused to sustain serious and permanently disabling injuries.  He sustained a severe degloving injury of the left hand involving the long, ring and small fingers.  He sustained amputated digits to the DIP joint of the left long, ring and small fingers with exposed bone over the distal aspect of the small finger. He was caused to undergo excisional debridement of the left long, ring and small fingers with closure by groin flap on August 7, 2002.  He was caused to undergo division of abdominal flap to fingers with split thickness skin grafting of long, ring and small fingers of the left hand on September 5, 2002.  He subsequently developed ulcerations of the skin at the grafted areas.  He suffered excruciating pain and suffering when his hand was caught and pulled into the roller of the smoothing and drying machine causing the skin to be shorn from his fingers and causing his fingers to be amputated.  He has undergone extensive physical therapy. He has been prescribed various medications. He has sustained

emotional, psychological and psychiatric injury.  He has in the past required and will in the future continue to require surgeries, medicines, medical care and treatment.  He has been rendered disabled from performing his pre-injury employment.  He has in the past been and may in the future continue to incur expenses for medical care and treatment.  He has in the past suffered and will in the future continue to suffer agonizing aches, pains and mental anguish.  He has sustained a loss of earnings and loss of earning capacity. He has sustained loss of enjoyment of life, loss of life's pleasures and loss of life's hedonic pleasures.  He has suffered permanent scarring and disfigurement.  He has suffered permanent embarrassment and humiliation.  He has in the past and may in the future continue to be totally disabled from performing his usual duties, occupations and avocations all to his loss and detriment.

WHEREFORE, plaintiff, Gil Grove, claims of defendants and each of them jointly and severally, sums in excess of One Hundred Fifty Thousand Dollars ($150,000.00) in damages exclusive of interest and costs, and brings this action to recover the same.

## COUNT II – BREACH OF WARRANTY

## GIL GROVE v. RIZZI 1857 S.p.A.

14.    Plaintiff incorporates by reference paragraphs 1 through 13 of this Complaint, the same as if fully set forth at length herein.

15.    At the time it sold the combined smoothing and drying machine at issue, defendant, Rizzi, was in the business of manufacturing, marketing, and selling combined smoothing and drying machines, and was with respect to the combined smoothing and drying machine unit, "merchants" within the meaning of Article 2 of the Pennsylvania Uniform Commercial Code.

16.     The injuries and damages sustained by plaintiff were caused by a breach of the implied warranty of merchantability extended to plaintiff by defendant, Rizzi, in connection with the sale of the combined smoothing and drying machine involved in plaintiff's accident.

WHEREFORE, plaintiff, Gil Grove, claims of defendants and each of them jointly and severally, sums in excess of One Hundred Fifty Thousand Dollars ($150,000.00) in damages exclusive of interest and costs, and brings this action to recover the same.

## COUNT III – NEGLIGENCE

### GIL GROVE v. RIZZI 1857 S.p.A.;
### TAN MACH AND TAN-TECH SERVICES, INC.

17.     Plaintiff incorporates by reference paragraphs 1 through 16 of this Complaint, the same as if fully set forth at length herein.

18.     The injuries and damages to plaintiff were caused by the negligence of the agents, employees, and servants of defendants, Rizzi, Mach and Tech, in

(a)     designing, assembling, manufacturing, selling, supplying, distributing, inspecting, repairing and/or maintaining a product in a defective condition;

(b)     designing, assembling, manufacturing, selling, supplying, distributing, inspecting, repairing and/or maintaining a product that was unreasonably dangerous to its intended and foreseeable users;

(c)     designing, assembling, manufacturing, selling, supplying, distributing, inspecting, repairing and/or maintaining a product that was not safe for all of its intended and representative purposes;

(d)     failing to have adequate warnings on the product;

9

(e)      failing to provide adequate warnings to the ultimate users of the product;

(f)      designing, assembling, manufacturing, selling, supplying, distributing, inspecting, repairing and/or maintaining a product that lacked all the necessary safety features to protect users of said product;

(g)      failing to either know of prior accidents and injuries with the product and/or failing to correct and prevent the same accidents and injuries from reoccurring;

(h)      designing, assembling, manufacturing, selling, supplying, distributing, inspecting, repairing and/or maintaining a product with parts/components that could cause serious injury;

(i)      violating applicable state, local and/or industry standards;

(j)      designing, assembling, manufacturing, selling, supplying, distributing, inspecting, repairing and/or maintaining a product that could accommodate components that were unsafe;

(k)      failing to adequately and properly test said product after its design and/or assembly;

(l)      failing to investigate, retain and analyze prior accident information;

(m)      failing to ensure that the ultimate users were advised of the dangers of said product and how to use the product safely to avoid injury;

(n)      designing, assembling, manufacturing, selling, supplying, distributing, inspecting, repairing and/or maintaining a combined smoothing and drying machine that was not equipped with a sensor or "red eye" on the bottom side of the roller which would automatically shut off the machine in the event that a worker's hand broke the plane or the beam of light before crushing the worker's hand;

(o)     designing, assembling, manufacturing, selling, supplying, distributing, inspecting, repairing and/or maintaining a combined smoothing and drying machine that was equipped with a sensor or "red eye" on the top roller which would automatically shut off the machine in the event a worker's hand broke the plane or the beam of light before crushing the worker's hand, but not on the bottom roller to automatically shut off the machine in the event a worker's hand broke the plane or beam of light before crushing the worker's hand;

(p)     designing, assembling, manufacturing, selling, supplying, distributing, inspecting, repairing and/or maintaining a combined smoothing and drying machine that did not adequately protect the hands of a worker attempting to remove a leather hide stuck inside of the machine;

(q)     failing to implement a safety feature which would make it impossible for a worker's hands to become caught and/or pulled through and crushed by the bottom roller of the machine;

(r)     failing to properly instruct the users of the product; and

(s)     by conducting themselves as aforesaid, defendant's actions and/or inactions were substantial factors and increased the risk of harm to the plaintiff.

19.     Solely by reason of the carelessness and negligence of the defendants, jointly and severally, as aforesaid, the plaintiff was caused to sustain those serious and permanently disabling injuries more fully set forth in paragraph 13 above.

WHEREFORE, plaintiff, Gil Grove, claims of defendants and each of them jointly and severally, sums in excess of One Hundred Fifty Thousand Dollars

($150,000.00) in damages exclusive of interest and costs, and brings this action to

recover the same.


SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.


BY:_____JTD-126_____
    ROBERT J. MONGELUZZI
    JOHN T. DOOLEY
    I.D. Nos. 36283/68801
    One Liberty Place, 34th Floor
    1650 Market Street
    Philadelphia, PA  19103
    (215) 496-8282

    Attorneys for Plaintiff, Gil Grove